UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

CAROLYN M. CONNORS,

               Plaintiff,

      -against-                             1:04-CV-1274
                                             (LEK/DRH)

CERTIFIED MARKETING SERVICES, INC.,

               Defendant.

_____

**MEMORANDUM-DECISION AND ORDER**

Plaintiff Carolyn Connors commenced the instant action against Defendant Certified

Marketing Services, Inc. alleging that Plaintiff was denied reasonable accommodations and was

terminated from her employment by Defendant in violation of the Americans with Disability Act

("ADA"), 42 U.S.C. § 12101 et seq., and New York State Human Rights Law ("NYSHRL"),

N.Y. Exec. Law § 12101.  Presently before this Court is Defendant's motion to dismiss pursuant

to Federal Rule of Civil Procedure 12(b)(6), or alternatively, for summary judgment pursuant to

Rule 56.  For the following reasons, the motion is denied.

**I.      BACKGROUND**

Plaintiff was hired by Defendant as a Bookkeeper in or about May 1987.  Defendant's

Rule 7.1 Stat. (Dkt. No. 7) at ¶ 2.  Not long thereafter, she was promoted to the position of

Manager of Accounting.  Id. at ¶ 3.  Beginning in or about May of 2002, Plaintiff became unable

to work in the office as a result of a persistent injury to her knee.  Id. at ¶ 25.  A decision was

made to allow Plaintiff to work from home.  Id.  This arrangement was intended to be temporary

1

in nature and was to last until Plaintiff could return to working at the office full-time.  Id. at ¶ 28;
Plaintiff's Rule 7.1 Stat. (Dkt. No. 11) at ¶ 28.  For the next year, Plaintiff and Defendant's Vice
President Michael Myers ("Myers") regularly communicated concerning Plaintiff's condition and
the possibility of her returning to office work.  Id. at ¶¶ 32-36.  Plaintiff's attempts to return to
the office on a full-time basis were hampered as a result of Plaintiff slipping in a office hallway
on March 14, 2003, causing her to receive Workers' Compensation from March 15 to May 19,
2003.  Id. at ¶¶ 43-45.  Plaintiff was then permitted to continue to work from home after she was
released from total disability status.  Id. at ¶ 46.  In November 2003, further correspondence
occurred in which Myers attempted to determine a definite time when Plaintiff might be
returning to the office full-time.  Id. at ¶¶ 49-51.  In response to a request from Myers, Plaintiff
provided a note from her physician, Dr. Elizabeth Howard, stating that Plaintiff was being treated
"for a chronic medical problem which is associated with severe chronic pain and decreased
functional capacity," and recommended that Plaintiff "be allowed to continue to work from
home".  Id. at ¶¶ 57-58.  In a letter dated January 26, 2004, Defendant terminated Plaintiff's
employment stating that Plaintiff's position "requires full-time on-site work" and continuing to
allow Plaintiff to work from home "would be an undue hardship on the corporation".  Id. at ¶ 61.

On or about May 3, 2004, Plaintiff filed an administrative charge with the United States
Equal Employment Opportunity Commission ("EEOC") alleging disability discrimination.  See
EEOC Complaint (Dkt. No. 7; Higgins Aff.; Exhibit B).  The EEOC sent Plaintiff a written
"Dismissal and Notice of Rights" which found that "[t]he evidence fails to indicate that a
violation of the law occurred . . . ."  Id.

On November 2, 2004, Plaintiff instituted this action alleging that she was denied reasonable accommodations and was terminated from her employment by Defendant in violation of the ADA and NYSHRL.

## II.     STANDARD OF REVIEW

Defendant styled this motion as one for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, as one for summary judgment under Rule 56 and submitted evidence outside of the pleadings in connection with this motion.  See Notice of Motion (Dkt. No. 7).  Plaintiff acknowledges in her memorandum in opposition that the Defendant's motion was moving for summary judgment as an alternative to dismissal, and took advantage of the opportunity to provide her own factual materials along with her opposition papers.  Plaintiff's Memo. (Dkt. No. 10) at 5.

A Rule 12(b)(6) motion to dismiss may be converted into one for summary judgment and disposed of as provided for in Rule 56 if the court accepts or considers materials outside of the pleadings in resolving the matter.  See FED. R. CIV. P. 12(b).  In the present case, Plaintiff had reason to know that the Court would likely consider materials beyond the complaint and, as such, Plaintiff has received adequate notice of the conversion as required by Rule 12(b)(6).[1]  On account of this, the Court hereby converts the motion to dismiss to one for summary judgment.

This Court may grant summary judgment only if the moving party is entitled to judgment as a matter of law because there is no genuine dispute as to any material fact.  See Silver v. City

---

[1] Rule 12(b) states that "[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided for in Rule 56." FED. R. CIV. P. 12(b).

Univ. of New York, 947 F.2d 1021, 1022 (2d Cir. 1991); Montana v. First Fed. Sav. & Loan

Ass'n, 869 F.2d 100, 103 (2d Cir. 1989).  The role of the Court on such a motion "is not to

resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while

resolving ambiguities and drawing reasonable inferences against the moving party."  Knight v.

U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986); see also First Fed. Sav. & Loan Ass'n, 869 F.2d

at 103.  The burden of showing the absence of any genuine dispute as to a material fact rests on

the party seeking summary judgment.  See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157

(1970).

## III.    DISCUSSION

The ADA, 42 U.S.C. § 12101 et seq., prohibits covered employers from discriminating

against "a qualified individual with a disability because of the disability of such individual in

regard to job application procedures, the hiring, advancement, or discharge of employees,

employee compensation, job training, and other terms, conditions, and privileges of

employment."  42 U.S.C. § 12112(a).  The statute defines "qualified individual with a disability"

as "an individual with a disability who, with or without reasonable accommodation, can perform

the essential functions of the employment position that such individual holds or desires."  42

U.S.C. § 12111(8).

"A plaintiff who raises a disability discrimination claim under the ADA bears the initial

burden of establishing a *prima facie* case."  Keck v. New York State Office of Alcoholism and

Substance Abuse Servs., 10 F. Supp. 2d 194, 198 (N.D.N.Y. 1998) (Kahn, J.) (citing Wernick v.

Fed. Reserve Bank of New York, 91 F.3d 379, 383 (2d Cir. 1996)).  Where a plaintiff alleges that

4

her employer failed to reasonably accommodate her disability, to satisfy this initial burden, the plaintiff must establish that: (1) the employer is subject to the ADA; (2) she is a disabled individual within the meaning of the ADA; (3) she was "otherwise qualified" for the position at issue (i.e., she could perform the essential functions of her job, with or without a reasonable accommodation); and (4) the employer had notice of her disability and failed to provide a reasonable accommodation.  Id.; Wernick, 91 F.3d at 383.  The standards are the same where a plaintiff claims that she was terminated in violation of the ADA, except that, to satisfy the fourth element of her *prima facie* case in connection with an unlawful termination claim, the plaintiff must also establish that "she was excluded [or terminated] from the job solely because of her disability."  Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 135 (2d Cir. 1995).

The parties do not dispute for purposes of this motion that Defendant is an employer subject to the ADA, that Plaintiff has a disability as defined by the ADA, or that Defendant had notice of the disability.  Defendant's Memo. (Dkt. No. 7) at 5.  At issue is whether Plaintiff was "otherwise qualified" for the position of Manager of Accounting - whether, in other words, she was able to perform the essential functions of that job, either with or without reasonable accommodations.

### A.    Was Plaintiff "Otherwise Qualified" For The Position?

Under the ADA, a disabled plaintiff must demonstrate that an accommodation exists which (1) will effectively allow her to perform the essential functions of her job and (2) is reasonable.  Keck, 10 F. Supp. 2d at 200 (citing Borkowski, 63 F.3d at 135-36).  The Second Circuit has stated that "the plaintiff bears the burden of proving . . . that an accommodation exists

that permits her to perform the job's essential functions." Borkowski, 63 F.3d at 138.  Plaintiff's

"burden of persuasion on the existence of an effective accommodation is not satisfied by mere

speculation." Jackan v. New York State Dep't of Labor, 205 F.3d 562, 566 (2d Cir. 2000).  If the

plaintiff meets that burden, the analysis shifts to the question of whether the proposed

accommodations are reasonable; on this question, the burden of persuasion lies with the

defendant. Borkowski, 63 F.3d at 135-36.

     Defendant contends that Plaintiff has failed to properly plead that she was capable of

performing the essential functions of her job.  Defendant states that the only accommodation ever

requested by Plaintiff and denied by Defendant was the request made by Plaintiff and her doctor

on or about December 20, 2003 that she be allowed to continue working from her home

indefinitely into the future.  Defendant's Memo. (Dkt. No. 7) at 5.  Defendant believes that

Plaintiff's inability to be present at work full-time prevented her from performing the essential

functions of her position, or alternatively, the requested accommodation was unreasonable within

the meaning of the ADA.  Id. at 6.

     Plaintiff contends that working at home was a reasonable accommodation in that she

could perform all the essential functions of her position while at home, and that Defendant failed

to address two other reasonable accommodations she proposed, providing her with a first floor

office and reducing her position at a reduced pay rate.  Plaintiff's Memo. (Dkt. No. 10) at 7, 13.

     The parties agree that beginning in May of 2002, Plaintiff requested and initially was

granted the accommodation of working from home.  Plaintiff also alleges that in November

2003, she made two additional accommodation requests: to have her office moved to the first

floor or to be given a reduced position at a lower pay.[2]  Connor's Aff. (Dkt. No. 12) at ¶¶ 27-28.

Defendant disputes that Plaintiff ever requested the two additional accommodations.

Defendant's Reply Memo. (Dkt. No. 13) at 9.  As this is a summary judgment motion, the Court

must resolve ambiguities in favor of the Plaintiff.  Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11

(2d Cir. 1986).

**B.** **Do the Requested Accommodations Effectively Allow Plaintiff to Perform the Essential Functions of Her Job and Are They Reasonable?**

If we assume Plaintiff did request these accommodations and that Defendant failed to

grant them, summary judgment in favor of Defendant would nevertheless be appropriate if the

proposed accommodations did not allow Plaintiff to perform the essential functions of her

position or that they were unreasonable as a matter of law.

The question of whether a particular accommodation would permit a disabled employee

to perform the essential functions of his or her job is one that must be answered by examining the

particular facts and circumstances of each case.  See Borkowski v. Valley Cent. Sch. Dist., 63

F.3d 131, 140 (2d Cir. 1995) ("To avoid unfounded reliance on uninformed assumptions, the

identification of the essential functions of a job requires a fact-specific inquiry into both the

employer's description of a job and how the job is actually performed in practice."); Stone v.

City of Mt. Vernon, 118 F.3d 92, 99 (2d Cir. 1997) ("[P]roper analysis . . . must be focused on

_____

[2]  The ADA imposes liability on an employer for "not making reasonable accommodations to the known physical or mental limitations" of an employee.  42 U.S.C. § 12112(b)(5)(A).  EEOC regulations further state that "[i]n general . . . it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed."  29 C.F. R. § 1630.9 Appendix.

the fundamental job duties of the employment position the individual with a disability [holds] . . . .").  The term "essential functions," which is not defined in the ADA itself, is defined in ADA regulations promulgated by the EEOC generally to mean the "fundamental" duties of the position in question, but not functions that are merely "marginal".  29 C.F.R. § 1630.2(n)(1).  The EEOC also provides illustrations of the reasons that a given function may be found essential[3] and examples of evidence that may be considered in making that finding.[4]  While a "court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position," ultimately, the question whether a task constitutes an essential function depends on the totality of the circumstances.  See Rodal v. Anesthesia Group of

---

[3] 29 C.F.R. § 1630.2(n) provides:

(2) A job function may be considered essential for any of several reasons, including but not limited to the following: (i) The function may be essential because the reason the position exists is to perform that function; (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

29 C.F.R. § 1630.2(n)(2).

[4] 29 C.F.R. § 1630.2(n)(3) provides:

(3) Evidence of whether a particular function is essential includes, but is not limited to: (i) The employer's judgment as to which functions are essential; (ii) Written job descriptions prepared before advertising or interviewing applicants for the job; (iii) The amount of time spent on the job performing the function; (iv) The consequences of not requiring the incumbent to perform the function; (v) The terms of a collective bargaining agreement; (vi) The work experience of past incumbents in the job; and/or (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).

Onondaga, P.C., 369 F.3d 113, 120 (2d Cir. 2004) (quoting Shannon v. New York City Transit Auth., 332 F.3d 95, 100 (2d Cir. 2003)).

A reasonable accommodation is one that does not eliminate any of a job's essential functions. Wernick v. Fed. Reserve Bank of New York, 91 F.3d 379, 384 (2d Cir. 1996). This may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, . . . and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9). A reasonable accommodation might also entail "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position". 29 C.F.R. § 1630.2(o)(ii). "An accommodation is reasonable, however, only if its costs are not clearly disproportionate to the benefits that it will produce." Stone v. City of Mt. Vernon, 118 F.3d 92, 98 (2d Cir. 1997) (citing Borkowski, 63 F.3d at 138). Once the plaintiff has done this she has "made out a *prima facie* showing that a reasonable accommodation is available, and the burden of nonpersuasion will shift to the defendant." Id.

In evaluating whether Plaintiff can perform the essential functions of her position, the Court is faced with the difficulty that it is not immediately apparent what Plaintiff's position was at the time of her termination, and the parties clearly do not agree as to what the essential functions of that position were.

Defendant contends that in or about 2001, Plaintiff's title was changed to Manager of Accounting and Cost Control and submits a job description outlining the duties of the position,

including responsibility for "day to day financial reporting", "interacting with the corporate CPA", "timely generation and payment of taxes", "supervision of contractor payroll", and "supervision of the Accounts Receivable function".  Myers Aff. (Dkt. No. 7) at ¶¶ 3-7; Exhibit A; Exhibit C[5].  As part of her duties according to Defendant, Plaintiff was responsible for the supervision and training of at least two other individuals.  Id. at ¶¶ 9, 30.  Defendant states that all of these duties constituted essential functions of Plaintiff's position and required daily full-time presence in the office to be performed adequately and effectively.  Id. at ¶ 8.

Plaintiff disputes this description of her position and states that she was never provided a copy of the job description.  Connors Aff. (Dkt. No. 12) at ¶¶ 4-6.  Plaintiff states that her responsibilities included "preparing final monthly reports" and "quarterly payroll reports", which were "available electronically", and therefore could be prepared from home.  Id. at ¶ 8.  While Plaintiff supervises the Accounts Receivable Manager and the Assistant Manager of Administration and Finance, she contends that such supervision consisted of checking the accuracy of their accounting work, which could be done electronically and did not require her presence at the office full time.  Id. at ¶¶ 11-14.  If her presence was required at the office, for such matters as a meeting, Plaintiff states that she was able to be in the office upon only short notice and had a family member at the office who could deliver hard copies if needed.  Id. at ¶¶ 9, 13.

_____

[5] Defendant also submits a job description dated October 1995 outlining Plaintiff's duties as Manger of Accounting, including "to manage, supervise and evaluate the performance of people . . . in the Accounting Department", to function as the "primary full charge bookkeeper", and to "supervise, give direction to, and have responsibility for all functions taking place in the Accounts Payable Department."  See Myers Reply Aff. (Dkt. No. 13) at ¶¶ 14-16; Exhibit C.  Plaintiff also disputes that she ever received this job description.  Connors' Sur-Reply Aff. (Dkt. No. 17) at ¶ 10.

10

While the Court considers the opinion of the employer as to what the essential functions of the position are "highly relevant evidence", many of the other factors discussed in the EEOC regulations remain unanswered.  There is clearly a factual dispute over whether a written job description was ever agreed upon by the parties outlining the essential functions of Plaintiff's position.  It is also unclear what amount of time Plaintiff spent generating financial reports in comparison to her supervisory duties, the consequences of not requiring Plaintiff to perform certain supervisory duties, and the work experiences of past incumbents or current incumbents in similar jobs.  See 29 C.F.R. § 1630.2(n)(3).  It is unclear what Plaintiff's role in the past has been with regards to the supervision and training of others in the office and whether Plaintiff's infrequent presence in the office satisfied those responsibilities.

Therefore, at the present time, the Court finds that a reasonable trier of fact could conclude that the essential functions of Plaintiff's position are just what Plaintiff says they are: the preparation of financial reports and supervision of the accuracy of the accounting work of others.

Defendant believes that Plaintiff's request to work from home is not an effective accommodation in that Plaintiff's inability to be present at work full-time prevented her from performing the essential functions of her position.  Defendant also contends that Plaintiff's request to be moved to a first floor office is not effective either.  Defendant's Reply Memo. (Dkt. No. 13) at 9.  Defendant supports this contention by stating that in Plaintiff's EEOC charge, she admitted that she is "limited in [her] ability to walk, sit, or stand for extended periods and lift, or climb stairs," and that such a limitation prevents her from performing the essential functions of

her position, regardless of whether her office is located or the first or second floor. Id.

However, if the Court accepts the view for purposes of this motion that the essential functions of Plaintiff's position are the preparation of financial reports and supervision of the accuracy of the accounting work of others, the accommodations requested by the Plaintiff - either working from home, working from a first floor office, or working in a reduced role - would still allow her to perform those essential functions. Plaintiff has therefore has established, as a *prima facie* matter, that an effective accommodation exists.

Assuming that the accommodations Plaintiff suggested allowed her to perform the essential functions, the accommodations must still be reasonable.

Defendant contends that Plaintiff's request to work at home is unreasonable as a matter of law. Defendant points to case law supporting the view that work at home is an extraordinary accommodation. "Some degree of regular, predictable attendance is fundamental to most jobs." Misek-Falkoff v. IBM Corp., 854 F. Supp. 215, 227 (S.D.N.Y. 1994); see also Mason v. Avaya Communications, Inc., 357 F.3d 1114, 1119 (10th Cir. 2004) ("[P]hysical attendance in the workplace is itself an essential function of most jobs."). However, the Second Circuit has found that "the question of whether a requested accommodation is a reasonable one must be evaluated on a case-by-case basis." Kennedy v. Dresser Rand Co., 193 F.3d 120, 122 (2d Cir. 1999) (citing Wernick v. Fed. Reserve Bank, 91 F.3d 379, 385 (2d Cir. 1996)). If the essential functions of Plaintiff's position are the preparation of financial reports and supervision of the accuracy of the accounting work of others, working from home might qualify as a reasonable accommodation in that it is a "modification or adjustment to the work environment, or to the manner or

circumstances under which the position held or desired is customarily performed that enables a qualified individual with a disability to perform the essential functions of that position." See 29 C.F.R. § 1630.2(o)(ii). As the costs of the accommodation do not clearly outweigh the benefits, the Plaintiff has met the burden of production that the proposed accommodations are reasonable. See Stone v. City of Mt. Vernon, 118 F.3d 92, 98 (2d Cir. 1997).

**C.      Whether the Requested Accommodation Would Cause "Undue Hardship" for Defendant.**

Even if Plaintiff's requested accommodation was reasonable, Defendant would still be entitled to summary judgment if the implementation of the accommodation would work an "undue hardship." Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 221 (2d Cir. 2001). "Undue hardship" is an employer's affirmative defense, proof of which requires a detailed showing that the proposed accommodation would "requir[e] significant difficulty or expense" in light of specific enumerated statutory factors. Lovejoy-Wilson, 263 F.3d at 221. Those statutory factors include (1) the employer's type of operation, including its composition, structure, and the functions of its workforce; (2) the employer's overall financial resources; (3) the financial resources involved in the provision of the reasonable accommodation; and (4) the impact of such accommodation upon the employer's operation. See 42 U.S.C. § 12111(10)(B).

Defendant has not adduced evidence to show that accommodating Plaintiff would result in an undue hardship. In its motion, Defendant did not provide any concrete evidence indicating the likely impact of Plaintiff's accommodation and no evidence of the Defendant's financial resources, the costs associated with the accommodation, or the impact of those costs on

13

Defendant.  Accordingly, an issue of fact remains as to whether the proposed accommodation constituted an undue hardship on the Defendant.

**D.     Was Plaintiff Terminated Solely Because of Her Disabilities?**

To avoid summary judgment, Plaintiff must also introduce evidence sufficient to permit a factfinder to conclude that she was terminated solely because of her disabilities.  Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 143 (2d Cir. 1995).  "Failure to consider the possibility of reasonable accommodation, if it leads to discharge for performance inadequacies resulting from the disabilities, amounts to a discharge solely because of the disabilities."  Id.

In its termination letter dated January 26, 2004, Defendant states that continuing the at-home accommodation would be an undue hardship and that Plaintiff was being terminated due to her inability to work on-site full-time.  See Defendant's Rule 7.1 Stat. (Dkt. No. 7) at ¶ 61; Exhibit H.  It is not disputed that Defendant had notice of Plaintiff's alleged disability. Defendant's Memo. (Dkt. No. 7) at 5.  Communications between Defendant and Plaintiff show that Defendant was also aware that Plaintiff's inability to work on-site full-time was a result of her alleged disability.  Defendant's Rule 7.1 Stat. (Dkt. No. 7) at ¶¶ 32-36.  Under the circumstances, this evidence is sufficient to establish, as a *prima facie* matter, that Plaintiff was terminated solely because of her disabilities.

**E.     Disability Discrimination Under the New York State Human Rights Law**

Plaintiff also claims that Defendant discriminated against her in violation of the New York State Human Rights Law by failing to provide her with reasonable accommodations and terminating her on the basis of her disability.  Complaint (Dkt. No. 1) at ¶¶ 23-26.

14

"It is well-established that the legal standard for a discrimination claim under the NYSHRL, Executive Law § 296 is essentially the same as the legal standard for a discrimination claim under the ADA." Zaborowski v. Sealright Co., Inc., No. 5:00-CV-771, 2002 U.S. Dist. LEXIS 12396, at *15 (N.D.N.Y. July 9, 2002) (Munson, J.) (citing Powers v. Polygram Holdings, Inc., 40 F. Supp. 2d 195, 202 n.2 (S.D.N.Y. 1999)). Since Plaintiff has stated a valid cause of action under the ADA and has raised material issues of fact which prevent the granting of summary judgment, Plaintiff has also stated a valid cause of action under the NYSHRL.

## IV.   CONCLUSION

Accordingly, it is hereby

ORDERED that Defendant's Motion to Dismiss or for Summary Judgment is **DENIED**; and it is further

ORDERED that the Clerk of the Court shall serve copies of this order by regular mail upon the parties to this action.

IT IS SO ORDERED.

DATED:      April 14, 2005
            Albany, New York



Lawrence E. Kahn
U.S. District Judge